IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | ) |
| | ) |
| WILLIAM J. GRUVER and | ) |
| ROBERTA LYNN GRUVER, | ) |
| | ) |
| Debtors. | ) |
| ------------------------------------------------ | )   Case No. 1:20-cv-229-SPB |
| | ) |
| WILLIAM K. GRUVER and | ) |
| ROBERTA LYNN GRUVER, | )   Bankruptcy Case No. 16-10241-TPA |
| | ) |
| Plaintiffs, | )   Adversarial Proceeding No. 18-1025-GLT |
| v. | ) |
| | ) |
| ROBERT KINCAID and FIRETECH, | ) |
| THE FIRE TECHNOLOGY PEOPLE, | ) |
| INC., | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM OPINION

**Susan Paradise Baxter, United States District Judge**

I.     INTRODUCTION

This civil action arose out of a commercial dispute between Plaintiffs William K. Gruver and Roberta Lynn Gruver ("Plaintiffs") and Defendants Robert "Randy" Kincaid[1] and FireTech, the Fire Technology People, Inc. ("FireTech" and, collectively with Randy Kincaid, "Defendants"). After sustaining fire damage to their home, Plaintiffs hired FireTech to remediate the damage and refurbish their residence. A series of events culminated in FireTech

---

[1] This Court's docket incorrectly identifies FireTech's co-Defendant as Ryan Kincaid (who is Randy Kincaid's son). The Clerk is requested to correct the inaccuracy.

1

abandoning the project before it was completed, such that the Plaintiffs' home was left in an uninhabitable condition.

At times relevant to this litigation, Plaintiffs were debtors in a Chapter 13 proceeding at Case No. 1:16-bk-10241 (Bankr. W.D. Pa.). During the pendency of their bankruptcy case, Plaintiffs commenced the within adversarial action in which they ultimately asserted four claims against the Defendants: a breach of contract claim against FireTech based on its failure to complete work on the fire restoration project (Count I); a claim against both Defendants for alleged violations of Pennsylvania's Home Improvement Consumer Protection Act ("HICPA"), 73 Pa. Stat. §§ 517.1-517.19, and Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. §§ 201-1, *et seq.* (Count II); a breach of contract claim against Defendants based on their failure to perform work in a "good and first-class Workmanlike Manner" (Count III); and a claim against the Defendants for alleged tortious interference with the administration of Plaintiffs' bankruptcy estate (Count IV). *See* Adv. Proc. No. 18-1025-GLT, No. 49 (Second Amended Adversarial Complaint).[2]

In May 2019, Plaintiffs' adversarial proceeding against Defendants was tried before United States Bankruptcy Judge Gregory L. Taddonio in a three-day bench trial. The following month, Judge Taddonio issued an extensive Memorandum of Proposed Findings of Fact and Conclusions of Law. *See* Adv. Proc. 18-1025-GLT, No. 248. Thereafter, both Plaintiffs and Defendants filed objections. *See* Adv. Proc. 18-1025-GLT, Nos. 258, 259, 263 and 264.

After conducting a *de novo* review of Judge Taddonio's memorandum, the parties' objections, and all relevant filings, the undersigned issued a Memorandum Opinion on May 12,

---

[2] Plaintiffs also asserted a fifth cause of action against a separate entity, which is not relevant for present purposes.

2

2022 setting forth this Court's findings of fact and conclusions of law. ECF No. 18. An Order of Judgment was entered that same day. ECF No. 19. Relevantly, the Court entered judgment in favor of Plaintiffs, and against FireTech, with respect to respect to Counts I, II, and III of Plaintiffs' operative Second Amended Adversarial Complaint. The Court also entered judgment in favor of the Plaintiffs, and against Randy Kincaid, with respect to the statutory claims in Count II of the Second Amended Adversarial Complaint. The Court's judgment against the Defendants on the foregoing counts was joint and several in the amount of $157, 104.06.[3]

Presently pending before the Court is Defendants' motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e). ECF No. 21. Plaintiffs have responded, ECF No. 23, and the matter is now ripe for adjudication.

## II.     STANDARD OF REVIEW

Generally, motions under Rule 59(e) must rely on one of the following three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice. *Wiest v. Lynch*, 710 F.3d 121, 128 (3d Cir. 2013); *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (*per curiam*). Here, Defendants invoke the third ground, arguing that this Court erred in its analysis relative to the issue of damages, notice and due process. Defendants also request clarification as to the Court's judgment on Count II concerning alleged statutory violations.

---

[3] The Court also awarded Plaintiffs' counsel fees and expenses in the amount of $53,665.78. That award has not been challenged.

### III. DISCUSSION

*A. Damages*

Defendants' initial request for reconsideration concerns the issue of damages. To recap, this Court in its May 12, 2022 ruling adopted Judge Taddonio's proposed finding that Plaintiffs had proven actual damages in the total amount of $78,552.03, which was comprised of a $43,641.03 overpayment to Defendants, plus $5,211 in consequential damages and $29,700 related to Defendants' fraud. *See* ECF No. 18 at 2, 16-19, 24-28, 33-34; *see also* Adv. Proc. 18-1025-GLT, ECF No. 248 at 136 and n. 815. This Court also adopted the Bankruptcy Judge's conclusion that a statutory enhancement, involving the doubling of actual damages, was warranted "because of the extent and severity of the Defendants' fraudulent and deceptive conduct and the fact that their violations of HICPA went 'to the very heart of the problems in this case[.]'" ECF No. 18 at *Id.* at 19 (quoting Adv. Proc. 18-1025-GLT, ECF No. 248 at 136). This doubling of actual damages produced an aggregate damages award of $157,104,06.

Because Defendants object only to the overpayment figure ($43,641.03), the Court will focus its discussion on that point. Relevantly, after determining that FireTech had breached its contractual obligations, the Bankruptcy Court concluded that the most reasonable way to calculate the Plaintiffs' contractual damages was to assess the amount by which FireTech had been overpaid relative to the amount of work it completed. To that end, the Bankruptcy Judge considered Ryan Kincaid's testimony that the project was somewhere between 65 and 70 percent completed, "give or take 5%." The Bankruptcy Judge adopted the bottom range of this estimate and concluded that the project was only 60 percent complete. Adv. Proc. 18-1025-GLT, ECF No. 248 at 133-34. The Bankruptcy Judge next determined that, "if the project is 60% complete, FireTech would have earned no more than $108,575.03 [*i.e.*, 60% of $180,958.39, which was the

4

final contract price]." *Id.* at 134 (footnote omitted). The parties had previously stipulated that FireTech was paid $152,216.06, so Judge Taddonio determined that the overpayment was the difference between $152,216.06 (the amount paid) and $108,575.03 (the amount earned) -- *i.e.,* $43,641.03. *Id.* at 134. The undersigned adopted the Bankruptcy Court's analysis and arrived at the same damages figure. ECF No. 18 at 2, 16-19, 24-28, 33-34.

Defendants now assert, as they did before, that the Court erred by computing damages based on the testimony of Ryan Kincaid. Defendants' central argument is that Ryan Kincaid could not have presented competent evidence concerning completion of the project because: (a) he was not an expert witness and, (b) he was not personally involved in the construction aspect of the project. Defendants insist that only an expert witness could have opined on the progress of the construction and the issue of damages and, therefore, the Court's overpayment award must be vacated.

This Court disagrees. "Generally, under Pennsylvania law, damages need not be proved with mathematical certainty, but only with reasonable certainty, and evidence of damages may consist of probabilities and inferences." *Bailets v. Pennsylvania Turnpike Commission*, 181 A.3d 324, 336 (Pa. 2018). "It is only required that the proof afford a reasonable basis from which the fact-finder can calculate the plaintiff's loss." *Witherspoon v. McDowell-Wright*, 241 A.3d 1182, 1188 (Pa. Super. Ct. 2020) (citation omitted). Although the factfinder's damage award must be based on "an intelligent estimate without conjecture," *id.* (citation omitted), "damages are speculative only if the uncertainty concerns the fact of damages rather than the amount." *BBB Indus., LLC. v. Cardone Indus., Inc.*, No. 3003 EDA 2019, 2022 WL 1088247, at *4 (Pa. Super. Ct. Apr. 12, 2022) (citation omitted); *see also Mass Bonding & Ins. Co. v. Johnston & Harder,* 22 A.2d 709, 713 (Pa. 1941) ("Where there is a basis in the evidence for a reasonable

5

computation of the damages suffered considering the nature of the transaction, a verdict may be based thereon, though there may be involved some uncertainty about it.") (citation omitted).

In its May 12, 2022 ruling, this Court observed that there was ample evidence in the record to show that Plaintiffs had suffered harm as a result of the Defendants' wrongful conduct; thus, the *fact* of damages was not speculative. And, considering "the nature of the parties' transaction," *Mass Bonding & Ins. Co.,* which had included an extensive degree of undocumented horse-trading, the Court found that Ryan Kincaid's estimate as to the degree of project completion served as a reasonable basis for the Bankruptcy Court's proposed calculation of overpayment damages. ECF No. 18 at 26.

For the reasons previously explained in the Court's May 12, 2022 ruling, the undersigned remains of the view that Ryan Kincaid's lay testimony served as a competent basis for the Court's damages calculation. To be admissible under Federal Rule of Evidence 701, a lay witness's opinion must be: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. Fed. R. Evid. 701. Here, Ryan Kincaid was personally involved in drawing up work estimates and sending Plaintiffs periodic invoices for completed work based on information he received in his capacity as operations manager for Firetech. *See* Adv. Proc. 18-1025-GLT, ECF 225 at 79:9-17, 80:1-3, 10-18. Ryan was also familiar with the project to the extent he had been on the premises in December 2017 for the purpose of preparing a supplemental estimate of work to be performed. Thus, his estimation of the percentage of work completed on the restoration project was rationally based on matters within his own knowledge and perception. Moreover, Ryan's testimony was helpful to the Court's determination of the amount by which FireTech had been

overpaid for the work it performed. Finally, Ryan's testimony did not concern "scientific, technical, or other specialized knowledge within the scope of Rule 702."

As this Court previously observed, lay witnesses are not precluded from opining on matters involving "particularized knowledge" that the witness acquires by virtue of his or her position in a business. *See* Advisory Committee Notes to Fed. R. Evid. 701 (2000 Amendments); *see also Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993) (court did not abuse its discretion in permitting the plaintiff owner to give lay opinion testimony as to damages that was based on his knowledge and participation in the day-to-day affairs of the business). While recognizing this principle, Defendants appear to suggest that acceptable lay testimony generally relates only to "an officer's knowledge of internal business operations, profits, and losses -- not the extent of damages and losses to a third-party that is separate from the business." ECF No. 21, ¶13 (citing cases). But the key distinction between lay and expert testimony is that "lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." Fed. R. Evid. 701 Advisory Committee's Notes (2000). Consistent with this principle, courts have sanctioned lay testimony that draws upon particularized knowledge in a variety of contexts. *See, e.g., United States v. Wadley*, Nos. 19-2931, 19-3242, 20-3189, 21-1917, 2022 WL 1011693 (3d Cir. April 5, 2022) (district court properly admitted testimony of lay police officers concerning their methodology for computing the aggregate amounts of drugs sold by each defendant during a two-year conspiracy, based on the sales they recorded during a 19-day period); *United States v. Thompson*, 393 F. App'x 852, 857-859 (3d Cir. 2010) (lay witness, who was responsible for customer service and sales of a GPS device, could testify about its functioning as well as the data generated by the device). Here, the Court is not persuaded that

Ryan Kincaid's testimony depended upon "a process of reasoning that can be mastered only by specialists in the field." Advisory Committees Notes to Fed. R. Evid. 701 (2000 Amendments). Accordingly, his testimony was admissible under Rule 701.

Defendants also posit that both this Court and the Bankruptcy Court questioned Ryan Kincaid's credibility and, therefore, it was error to consider his testimony as a basis for computing damages. This argument is also unpersuasive. First, Defendants could have, but did not raise the issue of Ryan Kincaid's credibility in connection with their original objections. Consequently, they are prohibited from doing so now. *See Stephens v. Jerejian*, 655 F. App'x 64, 65 (3d Cir. 2016) (noting that Rule 59(e) should not be used "to present ... arguments that could have been offered earlier"). In any event, Defendants' argument lacks merit. Here, the Bankruptcy Court expressed reservations about Ryan Kincaid's credibility insofar as Ryan (i) was not involved in the actual construction work and (ii) was aligned with the Defendants' interests, giving him a motive to overestimate the amount of work actually completed by FireTech. But this Court found that, in adopting a completion percentage at the bottom range of Ryan's estimate, Judge Taddonio adequately accounted for Ryan's diminished credibility by assuming that Ryan's estimate of completed work was overstated. ECF No. 18 at 26.[4]

Defendants have cited no law to persuade this Court that its ruling involved plain error or

---

[4] The Court also reiterates its previous conclusion that the lack of a more precise damages calculation in this case was largely the result of Defendants' practice of engaging in undocumented horse-trading without any cost analysis, which served to significantly muddle the scope of the project. Pennsylvania law dictates that the Defendants should not benefit from the fact that their tortious conduct and/or contractual breach also made an assessment of the resulting damages more difficult. *See, e.g., Osterling v. Frick,* 131 A. 250, 251 (Pa. 1925) ("One injured by the default of another will not be denied redress where his damages therefrom are shown approximately, although with less certainty because of injury of like character inflicted upon him by the acts of others.").

8

will result in manifest injustice. Accordingly, Defendants' first ground for relief under Rule 59(e) will be denied.

      B. *Notice and Due Process*

Defendants also seek reconsideration of this Court's prior determination that Robert ("Randy") Kincaid had adequate notice of the fact that Plaintiffs were asserting statutory claims against him in Count II of the Second Amended Adversarial Complaint. According to Defendants, the Plaintiffs did not directly argue that Randy Kincaid was subject to individual liability under Count II until post-trial briefs were filed in the Bankruptcy Court. Defendants insist that the language in the operative complaint did not provide adequate notice to Randy of his potential personal liability.

This argument is unavailing. As this Court has previously explained:

> any suggestion that Randy Kincaid was denied due process or that he was subjected to trial by ambush is belied by the record in this case. As Plaintiffs correctly point out, their operative pleading sets forth numerous causes of action under the heading "Claims Against FireTech and Randy Kincaid." Adv. Proc. 18-1025-GLT, ECF No. 49 at 7. Count II, in particular, states alleged violations of the HICPA and UTPCPL and specifically avers that "Firetech and Randy Kincaid, individually, have made numerous false or misleading statements; . . . ." *Id.*, ¶95. The complaint goes on to detail various acts and statements attributed to Randy Kincaid that form the basis of the claim. *See id.*, ¶¶ 95-116. And the *ad damnum* clause in Count II contains a prayer for damages without any language to suggest that the relief is being sought only against FireTech. *Id.* at p. 15. Plaintiffs also point to defense counsel's acknowledgement at trial that he was defending four distinct claims against FireTech and Randy Kincaid. Adv. Proc. 18-1025-GLT, ECF No. 224 at 8:10-13. Notably, defense counsel did not seek to have Randy dismissed from the litigation after the Bankruptcy Court dismissed the claim against him for alleged tortious interference with the administration of a bankruptcy estate. *See* Adv. Proc. 18-1025-GLT, ECF No. 225 at 36:9-37:11.

ECF No. 18, at 31-32.

Defendants disagree with the undersigned's analysis on this point, but their argument is essentially a rehash of the objection they previously raised when this Court conducted its *de novo*

review of the Bankruptcy Court's proposed findings of fact and conclusions of law. To reiterate, "Rule 59(e) motions are appropriate only to rectify plain errors of law or to offer newly discovered evidence, and they may not be used to relitigate old matters or to present evidence or arguments that could have been offered earlier." *Stephens,* 655 F. App'x at 65. Because the Court is not persuaded that Defendants have demonstrated plain error of law or any other basis for reconsideration, their motion will be denied.

C. *Fraud and the UTPCPL Claim*

Finally, Defendants seek clarification concerning an alternative argument they raised to challenge their liability under Count II -- namely, that the Bankruptcy Court had erred by failing to apply a showing of fraud under the UTPCPL. Defendants state that it is unclear whether this Court ever considered that argument. They request that the Court review the matter and issue a ruling on the merits, to the extent it has not yet done so.

In its May 12, 2022 ruling, this Court addressed the issue of Randy Kincaid's personal liability, which Defendants had challenged partly on due process grounds, as discussed above. In addressing Defendants' objections, this Court expressly acknowledged Defendants' alternative argument that the Bankruptcy Court had erred by not applying a showing of fraud under the UTPCPL. ECF No. 18 at 31. The Court ultimately determined that, "[because it agreed with the Bankruptcy Court] that Randy Kincaid may properly be held liable under Count II of the Plaintiff's Second Amended Adversarial Complaint, and because [it agreed] with the Bankruptcy Court's recitation and application of the relevant legal standard for liability under Count II, Defendants' objection on this point is overruled." ECF No. 18 at 32. By this language, the Court adopted the Bankruptcy Judge's analysis relative to Count II, and implicitly found that the

10

requirements of liability under the UTPCPL, including fraud, had been established. As no basis for relief under Rule 59(e) has been demonstrated, the Court concludes that further reconsideration of this matter is not warranted.

IV.     CONCLUSION

Based upon the foregoing reasons, Defendants' motion to alter or amend the judgment will be denied. An appropriate order follows.

*Susan Paradise Baxter* (signature)

Susan Paradise Baxter
United States District Judge